

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

FEB 27 2004

CLERK, U.S. DISTRICT COURT
By _____
Deputy

ROBERT JAMES ANDERSON, §
§
Petitioner, §
§
v. § 2:99-CV-0389
§ **Capital Litigant**
DOUGLAS DRETKE, Director, §
Texas Department of Criminal Justice, §
Institutional Division, §
§
Respondent. §

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Pursuant to the provisions of 28 U.S.C.§ 636(b), this case has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

### I.
### NATURE OF THE CASE

ROBERT JAMES ANDERSON, a state prison inmate has filed a petition for writ of habeas corpus pursuant to Title 28, United States Code, Section 2254.

### II.
### PARTIES

Petitioner, Robert James Anderson, is an inmate in the custody of the Texas Department of Criminal Justice, Institutional Division (TDCJ-ID). Respondent, Douglas Dretke, is the

Director of TDCJ-ID.

### III.
### PROCEDURAL HISTORY

A jury, on November 10,1993, convicted petitioner of capital murder.  The same jury, on November 15, 1993, answered the two punishment special issues in a manner requiring the court to assess petitioner's punishment at death by lethal injection.  *State v. Anderson*, No. 31,372-E (Dist. Ct. of Potter County, 108th Judicial Dist. of Texas).  On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and death sentence.  *Anderson v. State*, 932 S.W.2d 502 (Tex. Crim. App. 1996)(partial publication).  Petitioner filed a motion for rehearing which was denied.  *Anderson v. State*, No. 71,804 (Tex. Crim. App. Oct. 30, 1996).  Petitioner then filed a petition for writ of certiorari which was denied by the United States Supreme Court on June 27, 1997.  *Anderson v. Texas*, 521 U.S. 1122, 117 S.Ct. 2517, 138 L.Ed.2d 1019.  Petitioner filed a state application for writ of habeas corpus on February 22, 1998, which was denied by written order.  *Ex parte Anderson*, 43,459-01 (Tex. Crim. App. Nov. 17, 1999)(unpublished).

Petitioner then filed a motion for appointment of counsel in this Court on December 10, 1999, and was granted an equitable tolling and an extension of time to September 25, 2000, to file his federal petition for writ of habeas corpus.  The federal petition was filed on that date. Respondent filed his answer on December 7, 2000.

### IV.
### RULE 5 STATEMENT

In his answer, respondent conditionally states that petitioner adequately presented his first

and third grounds for relief to the state courts as required by 28 U.S.C. § 2254(b) and (c), but further states that respondent does not waive exhaustion in the event this Court determines any issues are unexhausted. Respondent asserts petitioner failed to present his second ground for relief to the state courts and contends such ground is now "procedurally defaulted for failure to exhaust." (Ans. at 14.)

V.

ISSUES

In three grounds for relief, petitioner raises issues relating to jury instructions on parole eligibility, and challenges the manner in which the state court conducted appellate review of the case. Those three grounds are:

1.  The trial court's refusal to instruct the jury regarding petitioner's parole eligibility violated petitioner's right to due process of law under the Fourteenth Amendment to the United States Constitution.

2.  The Texas death penalty statute is unconstitutional as applied under the Eighth and Fourteenth Amendments to the United States Constitution because the Texas Court of Criminal Appeals has refused to consider on appellate review both the aggravating and mitigating evidence regarding the imposition of the death penalty, in violation of *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950 (1976).

3.  The Due Process Clause of the Fourteenth Amendment, in conjunction with Art. 44.251(a), Texas Code of Criminal Procedure, requires the Texas Court of Criminal Appeals to engage in a proportionality review of the evidence relating to the "future dangerousness" and "mitigation" punishment issues.

VI.

STANDARD OF REVIEW

The petition for a federal writ of habeas corpus was filed after April 24, 1996.[1]

---

[1] The effective date of the AEDPA.

Consequently, this proceeding is governed by the Antiterrorism and Effective Death Penalty Act

of 1996 (the "AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct.

2059, 2063, 138 L.Ed.2d 481 (1997); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), *cert.*

*denied*, 118 S.Ct. 1845 (1998). Under the AEDPA, a habeas petitioner may not obtain relief with

respect to any claim that was adjudicated on the merits in state court unless he shows the prior

adjudication resulted in a decision that was either "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Section 2254(d)(1) concerns pure questions of law as well as mixed questions of law and

fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 122 S.Ct. 194 (2001). The

Supreme Court has explained that the "contrary to" and "unreasonable application" clauses of

§ 2254(d)(1) have independent meaning.

> A state court decision will be "contrary to" our clearly established precedent if the
> state court either "applies a rule that contradicts the governing law set forth in our
> cases," or "confronts a set of facts that are materially indistinguishable from a
> decision of this Court and nevertheless arrives at a result different from our
> precedent." . . . A state court decision will be an "unreasonable application of"
> our clearly established precedent if it "correctly identifies the governing legal rule
> but applies it unreasonably to the facts of a particular prisoner's case."

*Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001)("*Penry*

*II*")(citations omitted)(quoting *[Terry] Williams v. Taylor*, 529 U.S. 362, 405-08, 120 S.Ct. 1495,

146 L.Ed.2d 389 (2000)). An "unreasonable application" of Supreme Court precedent

"unreasonably extends a legal principle from [Supreme Court] precedent to a new context where

it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. at 1520. Under this analysis, it is not enough that the state court incorrectly applied federal law. To be entitled to relief, petitioner must show that the "ultimate legal conclusion" reached by the state court was objectively unreasonable. *Neal v. Puckett*, 286 F.3d 230, 245-46 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 963 (2003); *See also Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1850, 1852 (2002)(noting difference between "objectively unreasonable" application under AEDPA and one that is merely "incorrect"); *Williams*, 529 U.S. at 409-11, 120 S.Ct. at 1521-22.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000), *cert. denied*, 532 U.S. 949, 212 S.Ct. 1420 (2001). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption applies to all findings, express and implied, regardless of whether a petitioner's claims were afforded a "full and fair hearing" in the state court. *See Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002).

However, such deference scheme applies only to claims that have been adjudicated on the merits in state court. A resolution or "adjudication" on the merits in the habeas corpus context is a term of art that refers to the state court's disposition of the case on substantive rather than procedural grounds. *See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.), *cert. denied*, 121 S.Ct. 122 (2000); *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). As a rule, claims denied by the Texas Court of Criminal Appeals on the merits in a direct appeal, or by that court in a state

habeas proceeding in which findings of fact and conclusions of law made by the state trial court are explicitly adopted, are considered to have been "adjudicated on the merits" under 28 U.S.C. § 2254(d).  *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2001 (2001).  Therefore, petitioner must meet this heightened standard in order to obtain relief upon such claims under 28 U.S.C. § 2254(d).

<u>Evidentiary Hearing</u>

When the pleadings demonstrate a factual dispute, that, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded him a full and fair evidentiary hearing, a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing. *See Hughes v. Johnson*, 191 F.3d 607 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1003 (2000). The AEDPA raised the standards for obtaining relief on claims governed by 28 U.S.C. § 2254(d) so that the allegations of the petition must be sufficient to demonstrate this higher standard can be met before an evidentiary hearing is warranted.  The AEDPA further restricts the availability of an evidentiary hearing when the habeas petitioner has failed to develop the factual basis of the claim in the state-court proceedings.  *See* 28 U.S.C. § 2254(e)(2).  Each of these requirements imposes limits on the power of federal courts to grant evidentiary hearings and/or relief in post-conviction habeas corpus proceedings.  Therefore, although the full effect of the AEDPA on the initial determination of whether to grant an evidentiary hearing may not be certain, the intent of the AEDPA clearly appears to be to limit evidentiary hearings in federal court.  Although petitioner has, in his prayer for relief, requested an evidentiary hearing, the allegations in the petition before this Court present issues of law or issues about which there is no factual dispute.

No evidentiary hearing is warranted.

## VII.
## FACTUAL BACKGROUND

Respondent has set out a detailed summary of the evidence, both at the guilt/innocence

stage of the trial as well as at punishment, at pages 3 through 14, of his answer. The summary by

respondent will not be duplicated in this report and recommendation. However, the Court of

Criminal Appeals' recitation is set forth hereunder in order to provide a background for the

analysis of the issues in this Report and Recommendation.

> On June 9, 1992, neighbors observed a man pushing a grocery cart with a styrofoam ice chest inside. Minutes later, one of the neighbors, Lewis Martin, found the ice chest in a dumpster and discovered that the ice chest contained the body of a five-year-old girl. Martin called the police, and officer Barry Carden was dispatched to look for the suspect. The initial description of the suspect was that of a white male, about thirty years of age, wearing a black shirt, dark jeans, tennis shoes, and an orange baseball cap.

> Within ten minutes after receiving the dispatch, Carden approached appellant, who matched the description except for the shirt. Carden asked appellant for identification and a residential address, both of which appellant provided. Appellant asked why he had been stopped, and Carden replied that he was investigating an incident that occurred a few blocks away. Carden then asked appellant where he was going and where he had been. Appellant answered that he had pushed a grocery cart back to the Homeland store on nearby Western street. At this point, Carden asked appellant not to say anything else and further asked appellant if he would be willing to go back to the scene of that incident so that the witnesses could take a look at him. Appellant agreed to go, but Carden testified that he would have detained him for that purpose had he refused. Appellant sat in the back seat of the patrol car and was driven to the witnesses' location. The witnesses identified appellant as the individual seen pushing the grocery cart containing a styrofoam ice chest. At that point, appellant was handcuffed, advised of his constitutional rights, and transported to the Special Crimes Unit.

> Upon arrival at the Special Crimes Unit, physical samples were taken from appellant with his consent. He was also interrogated and gave both oral and written confessions. *Miranda* warnings were given and consent forms were signed prior to obtaining these statements. The police also obtained appellant's consent, a valid third party consent, and

a warrant to search appellant's home.

*Anderson*, 932 S.W.2d at 504-05.  Anderson's confession contained explicit details of the kidnaping, sexual assault, and murder of Audra Ann Reeves, a five (5) year old child, who petitioner abducted while she was walking between her home and a park where she had earlier been playing with other children. (SOF XXII at 47-48, 175-79; SOF XXIII at 221-23.)

VIII.
ANALYSIS OF PETITIONER'S GROUNDS FOR RELIEF

A.
Jury Instructions Regarding Parole

In his first ground for relief, petitioner alleges his due process rights under the Fourteenth Amendment to the Constitution were violated by the refusal of the trial court to instruct the jury on Texas parole law. (Pet. at 5-7; Mem. in Support at 5-16.)  At the time of petitioner's trial, Texas law required any person serving a life sentence for a capital murder to serve at least 35 actual years before becoming eligible for parole.  TEX.CODE CRIM.PRO. ANN. art 42:12 § 8(b)(2)(West 1993).  Prior to the punishment phase, petitioner's trial counsel objected to the court's charge on punishment and requested the trial court to instruct the jury as follows:

> Regarding the law of parole, you are instructed that a prisoner under a sentence of death is not eligible for parole.  A prisoner serving a life sentence for a capital felony is not eligible for release on parole until the actual calendar time the prisoner has served without consideration of good conduct time equals 35 calendar years.

(SOF XXVII at 504.)

In support of this claim, petitioner relies upon *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).  The Supreme Court in *Simmons* observed that federal courts will generally defer to a state court's determination of what a jury should and should not

be told about sentencing. *See id.* at 168, 114 S.Ct. at 2196. However, in death penalty cases, where future dangerousness is an issue and one of the sentencing options includes life without parole, the Supreme Court carved out an exception to this general rule.

> But if the State rests its case for imposing the death penalty at least in part on the premise that the defendant will be dangerous in the future, the fact that the alternative sentence to death is life without parole will necessarily undercut the State's argument regarding the threat the defendant poses to society.

*Id.* at 168-69, 114 S.Ct. at 2196. A *Simmons* parole-ineligibility instruction is required, however, only when a defendant would be ineligible for parole under state law. *See id.* at 156, 114 S.Ct. 2187; *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000). Therefore, *Simmons* requires that the jury be instructed about the defendant's parole eligibility "only where state law provides for life imprisonment without possibility of parole as an alternative to the death penalty." *Woods v. Cockrell*, 307 F.3d 353, 361 (5th Cir. 2002). Such an option was not available in Texas when petitioner was convicted and is not available now. This has been recognized by the Fifth Circuit.[2]

> In *Simmons*, the Supreme Court held that if the defendant's future dangerousness is at issue and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is ineligible for parole. 512 U.S. at 156, 114 S.Ct. at 2190. This Court has explained that *Simmons* requires that a jury be informed about a defendant's parole ineligibility only when (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole. *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994)(footnote omitted). Miller concedes that *Simmons* is distinguishable because Simmons was not eligible for parole and "would have effectively spent his natural life in the penitentiary." More to the point, because Miller would have been eligible for parole under Texas law if sentenced to life, we find his reliance on *Simmons* "unavailing." *Id.*

---

[2]*Woods v. Cockrell* was decided in 2002, subsequent to the filing of the petition in this case.

*Miller v. Johnson*, 200 F.3d 274, 290-91 (5th Cit.) *cert. denied*, 531 U.S. 849, 121 S.Ct. 122, 148 L.Ed.2d 77 (2000).  Since Anderson would have been eligible for parole if he had not been given the death penalty, he was not constitutionally entitled to the requested instruction on parole eligibility.

Petitioner also references, but does not meaningfully argue, an alternative basis for his argument that the requested instruction should have been given.  That is, in addition to *Simmons*, petitioner contends the prosecution improperly referred to the possibility of parole in closing argument and that such reference entitled petitioner to have the jury accurately instructed on his parole eligibility.  This claim was addressed by the Texas Court of Criminal Appeals.  That court found that the prosecution did improperly reference parole, but that such improper reference still did not entitle petitioner to the requested jury instruction because the proper remedy for such an improper reference was the traditional remedy for argument error, i.e., an instruction to disregard.  The Court of Criminal Appeals found that this traditional remedy of an instruction to the jury to disregard the improper reference to parole would have been sufficient to cure the improper prosecutorial argument, and that an additional jury instruction would not have been required.

In so holding, the Court of Criminal Appeals discussed its prior holding in *Smith v. State*, 898 S.W.2d 838 (Tex. Crim. App. – 1995) (plurality opinion), *cert. denied*, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995).  In *Smith*, at footnote 22, the Texas Court of Criminal Appeals in *dicta*, stated that if a prosecutor were to urge the jury not to give a defendant a life sentence because he would only serve a limited number of years in prison, then, in such a case, *Simmons* may command that the jury be informed of the minimum prison term for capital life prisoners.

The court then distinguished *Smith*, pointing out that the references to parole by the prosecution in Anderson's case, while improper, did not convey incomplete or inaccurate information about how parole was computed so as to require an instruction on when Anderson would be parole eligible. Instead, the court held that such a remedy might be required upon a defendant's request, in order to avoid the more drastic remedy of a mistrial, but that since the prosecutor's statements in Anderson's case did not convey any information about how parole might be calculated, the reference to parole could have been cured by an instruction to disregard. The Court of Criminal Appeals further held that in order to preserve error with respect to the prosecutor's reference to parole during final argument, the appellant (Anderson) should have objected and received an adverse ruling, or if his objection were sustained, he should have requested an instruction to disregard. The trial record reflects Anderson's trial counsel did properly object to the prosecution's improper reference to parole, but the trial judge did not overrule or sustain the objection, instead, the trial court stated that "the jury has been instructed." The appellate court held this did not constitute an adverse ruling.[3] Anderson filed a motion for rehearing on this issue which was denied. The decision of the Court of Criminal Appeals is entitled to the AEDPA deference mandated, especially since the *Smith* "exception" to *Simmons* was created by the Texas court.

---

[3] It would also seem, in the opinion of the undersigned, that in order to preserve error based upon *Smith*, counsel would have also been required to again request a parole eligibility instruction <u>after</u> the prosecution's improper reference to parole was made, since that basis for the instruction would not have been before the trial court when the instruction was initially requested and denied.

HAB54\DPENALTY\R&R\ANDERSON DRSMITH-1    Page 11 of 22

B.

Appellate Review of the Death Sentence

In his second and third grounds for relief, petitioner Anderson challenges the

constitutionality of the state appellate review of his death sentence. As previously discussed (see

paragraph IV), respondent conditionally states that petitioner adequately presented ground three

to the state courts as required for purposes of exhaustion, but contends ground two has not been

exhausted and that such ground should be denied as procedurally barred (respondent's answer at

page 14). Respondent did not, however, waive exhaustion as to ground three, but expressly

stated that should this Court find any claim to be unexhausted, respondent should not be

considered to have waived exhaustion (answer at page 15).


Exhaustion

The analysis of grounds two and three, both as to exhaustion and on the merits, is made

more difficult because petitioner presents both grounds jointly in his memorandum of law.

Further, while the title of grounds two and three are stated as separate and distinct grounds, the

argument actually presented in support of both grounds carry a common theme, i.e., that the

failure and/or refusal of the Texas Court of Criminal Appeals to review, on direct appeal, the

sufficiency of the evidence to support the jury's answer to punishment special issue number two

(also known as the mitigation issue or the *Penry* issue) denied petitioner his Fourteenth

Amendment right to due process.

In resolving the exhaustion issue, it is clear grounds two and three were not presented in

petitioner's state habeas petition, and we must look at petitioner's direct appeal in order to

determine if he presented federal grounds two or three there in order to satisfy the exhaustion

requirement.[4]

Petitioner identifies in the federal petition, direct appeal points of error six and eight as having been presented to the state courts as the basis for exhausting federal ground two (see federal petition at page 10), and identifies direct appeal point of error nine as having been presented as the basis of exhausting federal ground three (see federal petition at page 14).[5]

It is first noted that, by definition, it would appear that neither ground two nor three could have been exhausted on direct appeal, but would have to have been presented in the state habeas petition for exhaustion. The reason such grounds could not have been exhausted on direct appeal is because grounds two and three complain about a failure or refusal of the Texas Court of Criminal Appeals to review, on direct appeal, the sufficiency of the evidence as to punishment special issue number two (ground two), and about the failure of the court to engage in a proportionality review (ground three). Those claims were merely speculative prior to the Court of Criminal Appeals issuing its opinion. Even if petitioner, based upon prior Texas case law, anticipated and correctly predicted that the state appeals court would not conduct the appellate review complained of, the claims would not have become ripe until the Court of Criminal Appeals' opinion was actually rendered. Only then would it be made clear that the court did, in fact, fail to review the sufficiency of the evidence as to punishment special issue two, and fail to conduct a proportionality review.

---

[4]. In his state habeas petition, petitioner presented three grounds, all of which related to either the failure to give jury instructions on parole, or complained about a jury instruction which was given. Nothing was presented in the state habeas petition which involved the issues presented federally in grounds two or three.

[5]Although petitioner references appeal point of error nine in relation to ground three, he also makes reference to points of error six and eight.

Alternatively, and analyzing the points of error presented on direct appeal, point of error six was a claim that the evidence was insufficient to support the jury's answer to the mitigation special issue. Point of error eight was that TEX.CODE CRIM.PRO, art. 44.251(a), interpreted with TEX.CODE CRIM.PRO, art. 37.07 § 2(e), is facially unconstitutional under the Eighth and Fourteen Amendments. Neither point of error, however, complains about the refusal of the court <u>to review</u> the sufficiency of the evidence, rendering federal ground two unexhausted.

Analyzing point of error nine, the issue presented on direct appeal is petitioner's claim that the due process clause of the Fourteenth Amendment requires appellate review, i.e., proportionality review, of the "deathworthiness" of a capital defendant in view of the totality of the mitigating and aggravating evidence. Specifically, petitioner argued on direct appeal that the appeals court should consider "whether a particular defendant's death sentence is 'excessive' or 'disproportionate' as compared to 'sentences imposed in similar capital cases' in the state . . ." (See point of error nine, p. 29, of appellant's brief on direct appeal).

Although the title of ground three in the federal petition is essentially the same as state appellate point of error nine, the argument petitioner actually makes under federal ground three (pp. 33-40, memorandum of law in support of petition for writ of habeas corpus), is that TEX.CODE CRIM.PRO., art . 44.251(a), creates a Fourteenth Amendment liberty interest in appellate review of the mitigation special issue and that petitioner was entitled to direct appellate review of the jury's answer to the mitigation special issue pursuant to art. 44.251(a), and pursuant to *Honda Motor Co. Ltd v. Oberg*, 512 U.S. 415, 114 S.Ct. 2331 (1994).

It is the opinion of the undersigned that while grounds two and/or three as they are stated may be similar to certain points of error presented on direct appeal, the actual arguments presented under grounds two and three, relating to the denial or absence of direct appellate review over the jury's answer to the mitigation special issue, allege a different argument than the arguments made to the Texas Court of Criminal Appeals on direct appeal, and that petitioner has not exhausted his state court remedies with respect to grounds two and three in this federal petition.

The standard remedy for failure to exhaust is to dismiss the petition and permit petitioner to return to the state courts to present his claims to the state courts. As argued by respondent, however, if petitioner were to attempt to return to state court and present the substance of federal grounds two and three to the state courts, then such procedure would be futile because the state courts would not now consider new claims which were not presented originally, but instead would consider such claims barred from consideration as a successive state habeas application. In that event, the unexhausted claims would be subject to denial by this Court as procedurally defaulted (see respondent's answer pp. 32-34).[6]

It is the opinion of the undersigned that grounds two and three of this petition are procedurally barred as unexhausted. However, since the question as to exhaustion may be considered close, particularly as to ground three, and considering respondent's conditional

---

[6]If the state court would now consider the claim barred as an abuse of the writ, it should be considered procedurally barred from review in this court. *See Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Beasley v. Johnson*, 242 F.3d 248, 264 (5th Cir.), *cert. denied*, 534 U.S. 945, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001); TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(a). Anderson has not responded to this assertion, nor has he alleged any cause and prejudice to overcome a procedural bar, nor has he alleged manifest injustice would result from an imposition of the bar in this case.

statement that ground three was exhausted, the merits of both grounds two and three are addressed below.

## Merits

The Court preliminarily notes that grounds two and three both involve the failure/refusal by the Texas Court of Criminal Appeals to comply to art. 44.251(a) of the TEX.CODE CRIM.PRO. It is well settled that errors of state law will not provide a basis for federal habeas corpus relief. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

## Ground Two

Ground two alleges that the Texas death penalty statute is unconstitutional under the Eighth and Fourteenth Amendments because of the refusal by the Court of Criminal Appeals to consider, on appellate review, both the aggravating and mitigating evidence in violation of *Jurek v. Texas, supra*.

Petitioner's claim is controlled by Fifth Circuit precedent.  In *Moore v. Johnson*, 225 F.3d 495 (5th Cir. 2000), it was held that so long as the Texas statutory scheme permits appellate review of the jury determination that a first degree murder occurred, that a special aggravating factor existed, and further allowed review of whether proper procedures were followed in presenting to the jury all relevantly offered mitigation evidence in a separate punishment hearing, then the fact there was no appellate review of the jury decision that there was not sufficient mitigation evidence to warrant a life sentence, instead of death, does not render the procedure or the statute unconstitutional.  In *Woods v. Cockrell*, 307 F.3d 353 (5th Cir. 2002), the court was

even more direct on this issue, and held that the refusal of the Texas courts to review the jury

determination on the mitigation issue was not a violation of the due process clause of the

Fourteenth Amendment.

If ground two is not procedurally barred, it should be denied on the merits.

<u>Ground Three</u>

In *Pulley v. Harris, supra,* the court held, at 104 S.Ct. 876, that the court's examination of

its prior holdings makes clear that they do not establish proportionality review as a constitutional

requirement.  At page 879, the court held that the Eighth Amendment does not require a

comparative proportionality review of death penalty cases by a state appellate court.  To the

extent *Pulley* does not completely dispose of petitioner's argument that he is entitled to a

proportionality review, the case of *Hughes v. Johnson,* 191 F.3d 607 (5th Cir. 1999), at pages

622 and 623, analyzes the issue under the Eighth Amendment, and rejected the argument that

*Honda Motor Co. Ltd* required independent appellate review of deathworthiness or independent

appellate review of the proportionality of the death sentence.  Finally, in *Tuilaepa v. California,*

512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), the Supreme Court held that the jury's

eligibility decision, which involves a determination of whether the crime committed qualifies the

defendant to receive the death penalty, must be distinguished from the jury's selection decision,

where the sentencer (the jury) determines whether the death penalty should be imposed after it

has found that the defendant is a member of a class eligible for the death penalty.  *Citing*

*Tuilaepa,* the Fifth Circuit held, in *Woods v. Cockrell, supra,* that the Texas death penalty statute

was constitutional and the fact that no independent appellate review was provided for as to the

jury's selection decision did not render the statute unconstitutional.  Additionally, the holding by

the Texas Court of Criminal Appeals as to there being no Fourteenth Amendment due process

violation and its distinguishing *Honda*, has not been shown to have been erroneous much less

unreasonable.  If ground three is not procedurally barred, it should be denied on the merits.

Lastly, even if appellate review of the sufficiency of the evidence on the mitigation

special issue were required, petitioner cannot show harm by its absence.  A review of the

sufficiency of the evidence to support the jury's answers to both punishment special issues,

balancing the aggravating and mitigating circumstances, would not aid Anderson.  The facts of

this offense are particularly egregious, and while the record reflects that Anderson's trial counsel

admirably attempted to make a case mitigating against the death penalty, the evidence clearly

supports the jury's verdict and the propriety of this death sentence.

Anderson abducted a very young child seemingly at random, forced her into his home and

there sexually assaulted the child.  (SOF XXIII at 367; SOF XXIV at 408-11, 436.)  After

abusing the victim, he proceeded to kill her by various tortuous means, including choking her,

stabbing her with a paring knife and a barbeque fork (bending them both), slashing her throat,

and beating her with his hand, a pipe and a wooden stool.  (SOF XXIII at 367-68; SOF XXIV at

412-36.)  His methods intensified either because of anger, frustration, or both, and with her

refusal to die.  (SOF XXIII at 367; SOF XXIV at 432-33; SOF XXV at 9; SOF XXVII at 513-14.)

Then, apparently believing her to be dead, he forced her body into an ice chest for disposal.  (SOF

XXIII at 368.)  The victim, however, attempted to escape from the ice chest, causing Anderson to

continue his killing efforts, persuading the child to take a bath to clean her of the blood. (SOF XXIII at 368.) After increasing the sound of his stereo to silence her, he proceeded to drown the victim. (SOF XXIII at 368; SOF XXIV at 407, 430.) At one point during this horrible episode, this victim even made an appeal to petitioner.[7] His persistence in carrying out this assault and murder over a period of at least forty-five minutes (SOF XXIV at 436), leaving no major part of her body that did not sustain wounds (SOF XXIV at 343), and undaunted by a plea for mercy, would support a finding of sufficient aggravation, in and of itself, to support imposition of the death penalty.

The state did not, however, rely entirely upon evidence of this crime alone. Several witnesses were called to testify to petitioner's background, his character, and his prior bad acts. Witnesses including his sisters, stepsisters, and their friends (SOF XXVII at 234-35) testified how he sought younger girls, including his sister and stepsisters, for sexual acts over a period of many years (SOF XXV at 140-41, 154-57, 176, 178-84, 210-11, 214-20, 225-27) through methods that included beatings (SOF XXV at 184-86, 216), threats of violence (*Id.* at 216-17), and threats of death (*Id.* at 218), which were believed. (*Id.* at 227-28.) In fact, all of the members of Anderson's family who testified, testified for the prosecution. (SOF XXV at 162-63.) This included his recent wife, who testified in the guilt/innocence stage (SOF XXIII at 241-58), and his first wife who testified during the punishment phase (SOF XXI at 277-293). His first wife was mentally handicapped (SOF XXV at 191; SOF XXVI at 245) and testified to

---

[7] Oral and written confessions were admitted into evidence. During closing argument, the prosecutor referred to one of these when he stated that "when Audra asked him and said, 'Why are you doing this? I love you.' I mean, what did he do? 'I put her ass back in the tub and drown her.' That's what the confession says." (SOF XXVII at 515-16.)

circumstances indicating that Anderson also may have sexually assaulted a two-year-old girl (*Id.* at 280-83). Anderson also beat, choked, and kicked his first wife (SOF XXV at 157; SOF XXVI at 248, 252, 266, 275, 282-84, 306), threatened her (*Id.* at 282-83), and padlocked her inside her home (*Id.* at 252, 262-63, 284-5). Anderson also liked to watch little girls (SOF XXV at 67, 71, SOF XXVI at 254) and then masturbate. (*Id.* at 286-87.) He was manipulative and would stalk little girls and try to get them alone with him. (SOF XXV at 209; SOF XXVI at 234-35, 241-42, 297-99, 308-10.) He also told his first wife, within hearing of his mother-in-law, of his desire to have intercourse with twelve to fourteen year old virgins. (*Id.* at 271-73.) He threatened his mother-in-law with death (*Id.* at 271), and she believed him. (*Id.* at 274-75.) While babysitting children, he picked up his four-year-old nephew by the neck, lifting him a foot off of the ground as the boy struggled and turned red, releasing the boy only as another person arrived. (SOF XXV at 66-67.) Anderson was discharged from the army with a "misdemeanor" for refusing to follow orders. (SOF XXVI at 268-69.) The jail authorities also found a handmade imitation gun in the jail cell solely inhabited by Anderson while he awaited trial for the instant offense. (SOF XXV at 18-22, 34-35, 54-57.)

Anderson called no witnesses in the guilt/innocence phase of his trial, and in the punishment phase he only called witnesses who had been retained by his attorneys.[8] These included two mental health experts and his criminal investigator. He sought to explain his conduct and mitigate his punishment through evidence, including expert testimony, that he was an anti-social pedofile who suffered from mild to moderate brain dysfunction, major depression

---

[8] Most of his case was presented through cross-examination of the prosecution witnesses.

and an unstable family life including homosexual activity. (Pet. at 7-9.)  As unfortunate as such circumstances were, the jury and state courts were clearly entitled to find such mitigating evidence insufficient to warrant a life sentence for this crime in light of all the evidence.  This evidence included the psychiatrist and the licensed professional sex therapist who testified for the prosecution in rebuttal.

In fact, Anderson's own expert admitted that he knew what he was doing at the time of the offense and that it was wrong (SOF XXVII at 395-96), and characterized him as dangerous (*Id.* at 353, 396), sick and evil (*Id.* at 354), and lacking compassion (*Id.* at 355) or conscience (*Id.* at 417).  In rebuttal, the prosecution's experts testified how these same factors made Anderson even more dangerous. (*Id.* at 448-49, 472-73.) [9]  Therefore, even if the mitigation special issue sufficiency were properly before this Court, the jury's decision not to answer the punishment special issue so as to give a life sentence was a reasonable and rational answer.

## IX.
## RECOMMENDATION

Petitioner has failed to make a substantial showing of the denial of a federal right.  The state court adjudication on the merits did not result in a decision that was contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor did it result in a decision that was based on an

---

[9]The defense experts testified that in their opinion Anderson would not constitute a danger in a strictly controlled prison environment and if segregated from women and children.  The prosecution introduced evidence to rebut this claim.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The petition for a writ of habeas corpus should be DENIED.

## X.
## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen (14) days after its filing. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to timely file written objections to these proposed findings, conclusions and recommendation shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

IT IS SO RECOMMENDED.

ENTERED this __27th__ day of February 2004.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE